Case is 19-5836 and 19-5838 EPAC Technologies Inc v. Harper Collins Christian. Argument not to exceed 15 minutes per side. Mr. Travels said you may proceed for the appellant. Cross appellee when ready. Thank you. May it please the court. I believe that the district court erred. I just want to make sure something, because I was a little confused last time around. We're going to do all of your argument, are you going to do rebuttal? Yes, I've reserved, I'm sorry, I've reserved three minutes for rebuttal. Okay, but we're not going to do cross appeals. So you're going to do some, three minutes, and you get yours, but no rebuttal, right? Just so I understand what we're doing. That's fine, Your Honor. Okay, good. That was my understanding, Your Honor. Good. Let's stick with that plan. Good. I believe the district court erred when it granted judgment as a matter of law on the fraudulent concealment claim, ruling that it was a question of law. It is not a question of law. It is a question of law and fact, as all questions presented to the jury really are. The court decides what conditions give rise to the duty to disclose, and the jury decides whether the circumstances of the particular case are met to trigger that duty to disclose. That is what was presented to the jury in this case. The law was given to the jury. The jury determined that the law was satisfied, that there was a duty to disclose, and that that duty resulted in a finding of fraudulent concealment. The court set it aside erroneously under the assumption that it was a purely question of law, and it added to that a body of law that it did not present to the jury. And that is perhaps the key fault here that raises this case to kind of more than its facts. You can't just talk about it. I mean, just so we're on the same page, you can have fact questions that juries get to decide, but sometimes the law leads to rulings as a matter of law on the point, no matter what the facts are. So we can't just say it's always a jury question. So we do have two sophisticated entities involved in pretty intense negotiations. The intensity obviously continued with the litigation. It doesn't . . . I mean, you can understand the intuition behind the district court judge's approach, that this doesn't seem like the kind of confidential relationship that required almost fiduciary considerations going in each direction. I mean, it actually kind of seems the opposite. And so that's what . . . I think that's what the intuition behind his ruling. You can respond by saying that that ignores this exact case, or you can respond by saying the intuition is wrong. Well, I appreciate that that was the intuition the court was bringing to the equation. I believe that intuition is not applicable here. And the main reason it's not applicable is because another error the district court did when it instructed the jury and when it analyzed this, which was to ignore the Simmons line of cases, that said that when you have a contract, contracting parties have a duty to disclose information to . . . that the other side is not aware of or cannot observe to have a common understanding of what that contract is. That's the Tennessee Supreme Court. That's the Tennessee Supreme Court adopting, in essence, the restatement of torts on the question. It establishes a duty to disclose without a confidential relationship. So the analysis of the confidential relationship is unnecessary and should have been unnecessary in this case. It was only because of the district court's decision not to permit the Simmons line of cases . . . not to permit that law to apply and not to instruct a jury on that law, that got us into whether there's a confidential relationship to begin with. So tell me with a little more specificity what those cases say and why they're so helpful to you. Why the . . . That Simmons line of cases. The Simmons line of cases adopt the restatement of torts, which creates a duty to disclose information to the other side . . . to ensure you have a common understanding of the contract you're ending into. And, it does not require a confidential relationship. And, it is a principle that the Tennessee Supreme Court, in the Simmons decision . . . dated back to the early 1800's in Tennessee. It was not seen as establishing a new rule. And, in fact, it is consistent with the domestic sewing case . . . which established the confidential relationship part of it. Domestic sewing talked about how those . . . the analysis it was doing about confidential relationships . . . applies when you're not talking about things that are part of the transaction. Even if we might think you're right, why aren't we bound by Shaw . . . in its interpretation of the Simmons rule? Because the Tennessee Supreme Court in Simmons is the best template for what they meant in Simmons. And, there's nothing . . . Well, Shaw may have gotten it wrong, but Shaw is what it is. So, why aren't we bound under the panel rule to what we said in Shaw? Because the subsequent actions in Tennessee have consistently applied Simmons and its progeny . . . in ways that are not entirely consistent. Other courts have applied it in ways that are not entirely consistent with Shaw. Shaw was decided . . . Are there Tennessee decisions that have used the Simmons rule outside of real estate and car sales? There are. Well, there's a district court case, Bridgestone . . . I don't have the citation in front of me . . . that applied it to a situation where IBM was working with . . . I'm asking you now about the Tennessee Supreme Court. I don't know that there's a Tennessee Supreme Court . . . They come down with the Simmons rule. We interpret it in Shaw, correctly or incorrectly. And, since Shaw, has the Tennessee Supreme Court said that we were wrong in Shaw or do you have examples of . . . I do not have an example of the Tennessee Supreme Court addressing the question since Shaw. Do you have Tennessee lower courts? Tennessee lower courts have applied . . . Tennessee and district court cases have applied varying examples of Shaw . . . outside of Shaw in ways that are not entirely consistent with Shaw's analysis. But, I don't . . . The best evidence for that the Shaw decision should be perhaps reexamined . . . is that it has been continued to use in Tennessee. We don't get to do that under the panel rule. So, I'm just trying to . . . I'm asking you to give us a vehicle to disregard Shaw . . . other than it's wrong, which isn't going to apply. I don't . . . If what you need to disregard Shaw is a finding from the Tennessee Supreme Court . . . or a published opinion by a Tennessee court that Shaw is not right, I don't have that. I don't believe there's a court that's disagreed with Shaw. I don't believe there's been a circumstance to completely address Shaw. But, I think the question that the panel and that the federal courts face in diversity questions is . . . When does . . . What is the law of the state as announced by the Supreme Court of that state? And, I think a reading of Shaw . . . A reading of Simmons establishes what that is. I think if the Simmons line of cases and the Shaw line . . . and the domestic sewing line of cases . . . I mean, in some ways, this is a moot point because the problem here is . . . the jury instructions presented were not the same as were used to rule in the motion. And, that denies EPAC its right to a jury trial. The right to a jury trial on these claims includes the right to have the jury decide the facts and the law . . . apply the facts to the law given. And, if a district court can instruct the jury in one set of facts of what the law is . . . and then, reverse the jury on a different law, you don't have a jury right. And, that's what happened here. The jury was instructed that a confidential relationship requires trust and confidence between the parties. It had no mention of anything involving this dominion and control. And, the jury took that instruction. The jury ruled that there was a confidential relationship here. That it created a duty to disclose and that that duty resulted in the breach. So, that's the problem. If the law was that a confidential relationship requires dominion and control . . . that had to be instructed to the jury. And, it wasn't. I maintain that the jury was properly instructed in that regard. If the Simmons line of cases was not going to be instructed . . . and it was going to be under a confidential relationship alone . . . then the jury instruction as given on confidential relationships to the jury . . . is an accurate statement of what that law is. And, the jury decided the question based on that law. And, the jury's verdict was proper and should be upheld because of that. The district court can then not reverse itself, decide the law is different . . . and just simply put itself in place of the jury. If a court decides that a jury instruction was incorrect or incomplete . . . in a way that prejudice the parties, then a new trial is the remedy. Not simply supplanting its role, what it views the facts. And, as John Sutton said that the impression was, this was an arm's length transaction. I understand the impression that these are two companies. But, that doesn't restrict the confidential relationship. This is a requirements contract, which requires the very trust and confidence . . . Every requirements contract creates a tribal issue of fact of whether it's a confidential relationship? A requirements contract of this type, yes. Because, you are depending. EPAC is depending on the future business and good faith and prospects of . . . Didn't EPAC know that they had, what, 14 or 15 other printers? And, they reached an agreement where they were not going to use them for the subjects of this contract. They reached an agreement that they were going to spend an inordinate amount of time . . . two years negotiating, researching, working with . . . with HarperCollins to reformat its entire electronic files of its properties. Two years of time, so it would be the exclusive printer. Four books under 1,500 copies. That created that relationship. It was a five-year relationship. At one point, HarperCollins floated putting it inside their own warehouse. It was an intimate partnership relationship that required the trust and confidence of both sides. EPAC had competitive advantages over these other printers in this area. It had to have the trust and confidence during these two years . . . that HarperCollins would not disclose, reveal or undermine its competitive advantage . . . to HarperCollins. And, that would continue to be true throughout this relationship. It had to trust that HarperCollins would not shift its business strategy away . . . and wipe out the volume that it was getting as part of this deal. There was a trust in . . . The fact that the deal that created the confidential relationship . . . may have been between two entities, doesn't change the fact that it was. An arm's length transaction, I can, you know . . . I'm having trouble figuring out when you're switching from your fraudulent concealment argument . . . to your breach of the confidentiality agreement. Well, I'm talking about the fraudulent concealment now . . . because it's the breach of the confidential relationship. The confidentiality agreement argument . . . My argument is separate from this. The confidential . . . The violation of the confidentiality agreement is simply a question of . . . which provision in that agreement governs. There's one provision that has a one-year confidentiality period . . . for information about the transaction being discussed. There's a five-year period of general confidentiality. And, my argument is that it was improperly dismissed . . . because the court only looked at the one year. The five-year is applicable. And, the five-year should have been put to the jury . . . to resolve the ambiguities between these two provisions. It wasn't. Your red light's been out for a little while. So, why don't you get your full rebuttal and we'll hear from the other side. Thank you. Thank you. May it please the court. My name is Steve Riley. And, I represent Thomas Nelson . . . which is now known as Harper Collins Christian Publishing. I'd like to focus my remarks on . . . Excuse me, to . . . Riley, before you get into your argument, could I ask you a question that just occurred to me? Sure. Are you arguing that the confidentiality agreement . . . supplanted whatever would otherwise have been basically the common law duty . . . under the fraudulent concealment theory? If that makes sense to you? I'm not sure I understand that question, but . . . Well, he's claiming that under Tennessee law . . . you have a duty to disclose information that you have in all . . . basically in all transactions. Right. Now, if you enter into a specific confidentiality agreement . . . does that in any way alter what otherwise would be the obligation under Tennessee law? In other words, it seems to me that you ought to be able to contract around . . . whatever the Tennessee law says, unless it's against public policy. Yes, I think that it could. But, the point is you're not arguing that. I'm not arguing that. Okay, that's what I want to know. The confidentiality agreement at issue here . . . had a one-year term for terms of the transaction. And, that year had expired. And, that's why the judge determined that . . . that we had not breached that agreement. It also had a five-year term with respect to their technology . . . which was . . . which is not at issue. With respect to the confidential information that they claim . . . Judge Crenshaw specifically found that . . . there was no legal duty for Thomas Nelson to disclose . . . to EPAC, that it had received a proposal . . . with lower pricing from a competitor. And, nonetheless entered into the contract with EPAC. So, are you . . . Is it your position that Shaw's interpretation of Tennessee law . . . is not binding on this court? My position is Shaw is correct. Okay. And, there is no basis to overturn it. And, there is law both before Shaw and after Shaw confirming that . . . including both Tennessee state court law after Shaw . . . and federal court, district court cases confirming Shaw. Okay. So, assuming the existence of this confidential relationship . . . and the element of dominion . . . assuming that it's a question of fact . . . Can the district court still grant your motion for JMOL . . . given the facts alleged by EPAC? Well, I think there . . . I think that the role of the court is to define . . . to determine whether there is a duty. Okay. Here, there are no facts that support a confidential relationship. How about exclusive, the exclusive nature of it? There was an exclusive nature as to a very narrow, defined set of book orders . . . types of book orders, specifically defined by the contract. There's no issue about that. Thomas Nelson committed to send those orders to EPAC . . . and EPAC agreed to take them. But, they were very narrow, very limited . . . and specifically defined in the contract. And, indeed, that gets to a point I'll talk about later . . . about the breach of that agreement . . . because EPAC presented no proof of damages . . . with respect to that. But, have I answered your question, Judge Donald? Yes. So . . . But, his argument then, if I understand it . . . went on from the Simmons-Shaw question to say . . . that however the district judge came out about it . . . he instructed the jury under one theory . . . and then he applied another theory for the Rule 50 motion. So, what's your response to that? My response is . . . what the district court instructed the jury is actually irrelevant . . . to the issue of whether the district court properly applied the law . . . with respect to whether there was a duty. So, even if he was wrong in how he instructed the jury . . . you would say . . . Irrelevant. It was right in his ultimate judgment . . . because it was based on the facts and the proper standard. Correct. It was his . . . It was the court's job to determine whether there was a duty. Here he found . . . that there were no facts that supported . . . supported dominion or control. In fact, he found this was an arm's length negotiation. Isn't it the jury's job to determine the facts upon which that legal standard is applied? They were undisputed.  that this was an arm's length negotiation. There were no facts here. We had two very sophisticated parties. They negotiated. They had lawyers. This contract, which is multi-pages . . . it's an appendix . . . in our appendix at page 70 . . . 67 . . . went through ten revisions to their lawyers and principals . . . with respect to the details of it. There is no evidence of . . . that either party had dominion or control over the other. All of the evidence was . . . that they, in fact, had just the opposite. It was arm's length. That is, Judge Crenshaw specifically said in his opinion . . . I'll just read a nickel's worth of that. These two very sophisticated business entities seeking to better their respective . . . business positions in the publishing marketplace . . . through a supplier-consumer-customer relationship. They guarded their positions carefully. They relied on lawyers. They evaluated whether it was a good deal or a bad deal. This dynamic is simply incompatible with a concept or creation . . . of a fiduciary or confidential relationship . . . which gives rise to a duty to disclose . . . as neither party can gain dominion or control. That's what he said. That's exactly what the facts showed. And, they haven't shown any other. As far as the facts go, one of the things that I understood your fellow lawyer was arguing . . . was that the proper remedy here, if we agreed with any of this . . . was to send it back for a new trial. Have they come forward, in your estimation, in any of these briefs . . . with any additional facts on this dominion and control question . . . that they would offer in a new trial that aren't already present in this record? No, sir. They have not. Now, there are facts that they state in their brief, which are wrong. For example, one of their facts is they say Thomas Nelson directed EPAC . . . to build a plant in Ohio. That is not in the record. In fact, the record is just to the contrary . . . that EPAC decided to put that plant in Ohio, because they wanted business in Chicago. They say that the parties referred to themselves from time to time as partners. But, the contract between the parties specifically defines themselves . . . as EPAC specifically is defined as an independent contractor. And, so they also say this confidentiality agreement required a long-term relationship . . . when it specifically says it doesn't require a relationship at all. So, the undisputed facts in this case are that these parties were an arm's length transaction. It's a classic, actually, arm's length transaction. And, in those circumstances, there can be no duty to disclose. If there were, then there would be a duty in every contract to disclose. For example, a buyer would have to disclose under their formulation . . . And, that makes no sense. Let me ask you a question in a slightly different way that your opponent didn't get to . . . in his initial argument. And, that . . . the question relates to the standard that the District Court should have applied . . . to assess the facts that were in the record, as to whether there was or wasn't a duty to disclose. Now, the reason I'm asking the question is that it looks like the District Court . . . simply took all the evidence that supported your position and that was the basis of the ruling. Where, at least the argument is that Tennessee law says that you're supposed to look at the strongest . . . legitimate view of the evidence, in favor of the non-moving party. And, it doesn't look like he did that. So, do you have a . . . what would be your response to that? My response is that he is supposed to take the evidence . . . as to whether a reasonable jury could find under the facts . . . a position that would be consistent with the law. Here, there's no evidence of something that's not arm's length. There's no evidence of dominion and control. So, they make much about he just didn't disregard other evidence. There is no other disregard . . . evidence to disregard. It was undisputed, what these parties did. Does that respond, Your Honor, to your . . . Well, I think so. Another way of saying it, I guess from your position is . . . even if the District Judge stated it incorrectly, it comes to the same conclusion anyway. Is that basically what you're saying? Because there is no evidence? That's right. Yes. All right. Why did this case take so long and generate so many fees? Oh, my goodness. Without criticizing the other side. It's hard for me to do, but . . . Was there a settlement? Was there a settlement pause? I mean, it's really quite an astonishing case to take this long and generate that many fees. Is it all e-discovery fees? I've been practicing over 40 years. It's the most astonishing thing I've ever seen. And to get into the details of that would take more than the time that I have, and I'm sure you all don't want to hear it. Why don't you give me . . . No, I don't want the back and forth stuff at all. I'm really quite curious. Was there a settlement pause on it? Was there . . . There was not a settlement pause. Was it discovery, all e-discovery? Most of it was e-discovery. We had five district judges on this case. Oh, so this was a Nashville issue. It was a Nashville issue. We had two magistrate judges. One magistrate judge appointed a special master who took about a year and a half with respect to e-discovery, found no intent, incidentally. Then that went back to a new magistrate judge that was brand new to the bench and wrote extensive opinions and a long time it took to do that. We mediated the case. It did not resolve. And then Judge Prinshaw got the case, put it on a fast track, and it was tried. But it was an extraordinary case. The fees are extraordinary. But they did occur. And they occurred in large part because of the claims presented by EPAC and the intertwining of those claims. I wasn't asking the question because I was that interested in your claim for fees, for what it's worth. I'm just not happy about the case. It doesn't make the system look very good. We care about the system working. It doesn't seem like the system worked in this case. I think a big part of it I've forgotten about the problem with the vacancies in Nashville. Well, I'm an officer of the court, and I'm not proud of this case either. But I'm proud of the way we attempted to handle it. There were lots of issues that came up, and it's not a proud moment, I guess, for the . . . Yeah, well, it is what it is. All right. There are a number of other alternative bases with respect to the fraudulent concealment point, which are in our brief, and I'm not going to detail them unless the court has an interest in them. But they surround the notion that here Thomas Nelson had a lower price proposal and went ahead and entered into this contract. So there could be no reliance. There could be no damages. They forego the lower price and entered into a contract with EPAC. The punitive damages, of course, are tied just to the fraudulent concealment. They also go away on the duty issue, but there are also a number of reasons that they on themselves would not stand, including that there's a 200 to 1 ratio, which is unconstitutional. There's no evidence of egregious conduct, and I might note for the court that in a very recent case, I think last week or perhaps two weeks ago, the Tennessee Supreme Court, in a footnote, spoke to a panel of this court's opinion on the constitutionality of the punitive damage cap and noted that they did not disagree with that reasoning, and it appeared to me that they're encouraging the court to send that issue to them to change it. Promissory fraud was a theory of the plaintiff that Judge Crenshaw dismissed on summary judgment some 18, I think, months before trial. He was correct in doing so. EPAC now argues that there is a provision in this contract in which New York law applies, and they say that he was wrong because that provision shouldn't apply. That New York law here provides that you can't have a promissory fraud case when you're seeking to enforce the promises of the contract, and that's exactly what they're trying to do here. That provision is enforceable, and even if you did look to Tennessee law, Tennessee law would enforce it for its principles of choice of law. That determination was correct. I'm about to run out of time, but I'd like to note that we seek an appeal of the court's refusal to grant a judgment as a matter of law on the contract claim, and the reason that we do is that the damages, the only proof of damages that EPAC submitted included, two-thirds of it included lost profits with respect to books that are not included specifically by the contract. And the notion that EPAC says that this Is there anything more timely in this case in the future? We're going to stick with the red light. Thank you, Your Honor. Thank you. Let me rebuttal. Thank you, Your Honor. Quickly, opposing counsel said that if my position is correct, then there would be a duty to disclose in every contract. That's exactly what the Simmons case says. That's why there is a duty here. Every contract in Tennessee does have a duty to disclose. That's not governed by Shaw. That's not overridden by Shaw. That was the error that the court did not rule on the Simmons line of cases that established exactly that duty. The court did apply the wrong standard. The court, when it did its motion for judgment as a matter of law, it It seems to me that if your articulation of the Simmons rule is correct, there would be a lot of cases that would be advancing that in Tennessee courts and they would be in the Tennessee appellate court system saying what you just said. There are cases, and if you go back and look at there, there's a bunch of cases. But you couldn't tell us any appellate cases in Tennessee after Shaw that go outside the real estate and car area, correct? Shaw deals with whether there's dominion and control. Shaw doesn't address the Simmons line of cases over whether there's a duty to disclose in every contract. So the Simmons line of cases establishes the restatement of torts, section 551, as the law in Tennessee. It doesn't matter if there's a confidential relationship anymore, and the restatement does not limit itself to sales or real estate. So that's the law. You have a duty to disclose in a contract in Tennessee, and that's what they breached. That failure to do that instruction was error here. The jury found there to be a confidential relationship. There is plenty of evidence in the record to support that. It is disputed, and the nature of the agreement also establishes that. The promissory fraud claim was wrongfully dismissed based on the court's view that New York law applied. It does not because Tennessee choice of law analysis would not enforce that choice. Fraud in Tennessee is actionable whether you have a contract or not, and you can't contract your way around fraud in Tennessee. Tennessee would not apply it under its own choice of law analysis. But you have two different laws. Right. And it doesn't mean a state doesn't enforce another state's law under the choice of law provision where the parties have agreed to it just because the forum state law is different. In Tennessee, they have an analysis of the choice of law, and it's not just because it's different. It's because Tennessee has an overriding public interest in enforcing fraud laws about fraud that occurs in Tennessee. That's just another way of saying that it would be violative of the public policy of the forum state. Exactly, and that's the analysis that should have been done on Tennessee's choice of law analysis. Is there authority that says it's violative of Tennessee public policy? Yes. I mean, contrast the Tennessee public policy where it does not enforce any contractual provision that eliminates liability for fraud. I guess what I'm saying, the fact that Tennessee has one set of laws doesn't mean the fact that another state has a different view of that law means that, therefore, not only is it different, but it's also violative of Tennessee public policy. It doesn't necessarily mean just because it's different. In this case, it is. And in this case, the promissory fraud claim under Tennessee's choice of law analysis required it to be ruled under Tennessee law. Tennessee law enforces promissory fraud because of its public policy to always hold people liable for fraud. New York gives you a pass on fraud. All I'm asking you is, is there a case that says that? Yes. I mean, the cases are cited in our briefs, and I won't. I'm out of time, but I would invite you to look at the briefs because I do believe that the cases are set out there that establish exactly that. All right. Thanks to both of you for your helpful briefs and arguments. We appreciate it. The case will be submitted, and the clerk may call off the last case.